IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| DeMARCO MANTELL BIRCH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 19-CV-0276-TCK-FHM |
| | ) |
| SCOTT CROW, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Petitioner, a state inmate appearing pro se,[1] filed a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1) to challenge the constitutional validity of the judgment and sentence entered against him in the District Court of Washington County, Case No. CF-2013-131. Before the Court is Respondent's motion to dismiss the habeas petition as time-barred (Dkt. 16). Respondent filed a brief in support of the motion (Dkt. 17), and Petitioner filed a response in opposition to the motion (Dkt. 18). In addition, as directed by the Court, Respondent submitted a copy of the state court record (Dkt. 21).[2] Having reviewed the materials submitted by both parties, and for the reasons that follow, the Court grants Respondent's motion and dismisses the habeas petition, with prejudice, as time-barred.

---

[1] Because Petitioner appears pro se, the Court liberally construes his pleadings. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). However, when quoting from Petitioner's pleadings, the Court omits full capitalization and punctuation errors.

[2] When citing the state court record, the Court generally refers to the CM/ECF header page number located in the upper right-hand corner of each document. However, when citing to the trial transcripts, the Court refers to the transcript's original page number, not the CM/ECF header page number. The abbreviation "O.R." refers to the original record, docketed in this Court in three volumes at Dkts. 21-12, 21-13, and 21-14.

# I.

In February 2016, a Washington County jury convicted Petitioner of trafficking in an illegal substance (methamphetamine), in violation of OKLA. STAT. tit. 63, § 2-415.[3] Dkt. 1, at 1; Dkt. 21-9, Tr. Trial vol. 3, at 586; Dkt. 21-14, O.R. vol. 3, at 54. To obtain this conviction, the State had to prove, beyond a reasonable doubt, that Petitioner (1) knowingly, (2) possessed (3) "twenty (20) grams or more of a mixture or substance containing a detectable amount of . . . methamphetamine." OKLA. STAT. tit. 63, § 2-415; Okla. Unif. Jury Instr. (OUJI)-CR 6-13; *see also* Dkt. 21-14, O.R. vol. 3, at 38 (Jury Instruction No. 20, elements instruction on trafficking charge). Evidence presented at Petitioner's trial established that Officer Troy Newell discovered methamphetamine in Petitioner's car[4] during an April 2013 traffic stop in Bartlesville, Oklahoma. Dkt. 21-8, Tr. Trial vol. 2, at 252-53, 256-62, 266-69. During the stop, a drug-sniffing dog handled by Officer Andrew Ward alerted near the front door on the passenger side of Petitioner's car. *Id.* at 326-33. Sometime thereafter, Newell approached the driver's side door to ask Petitioner to step out of the car. *Id.* at 266-69. Newell saw Petitioner removing his hand from a clear plastic cup containing orange juice, a piece of a white plastic bag, and a "crystal-like substance" that appeared to be methamphetamine. *Id.* Assisted by Officers Steven Silver and Steve Gardella, Newell poured the orange juice from the cup into two evidence vials and the crystal-like substance into a third vial. *Id.* at 271, 367-72, 378, 382-89. Field tests performed by Silver and Gardella and

---

[3] The jury also found Petitioner guilty of two misdemeanor traffic offenses. Dkt. 21-14, O.R. vol. 3, at 54-55. But the trial court took no action on those offenses at sentencing and those offenses are not part of the challenged judgment and sentence. *See* Dkt. 17-1 (judgment and sentence); Dkt. 17-2, *Birch v. State*, No. F-2016-306 (Okla. Crim. App. 2017) (unpublished) (hereafter, OCCA Op.), at 1 n.1; Dkt. 21-11, Tr. Sent. Hr'g, generally.

[4] Newell ultimately learned that Petitioner was not the registered owner of the car. Dkt. 21-8, Tr. Trial vol. 2, at 296. However, at the time of the traffic stop, Petitioner was the driver and sole occupant of the car. *Id.* at 261-62.

laboratory tests performed by Kourtney Heard, a criminalist with the Oklahoma State Bureau of Investigation, confirmed that the crystal-like substance in the third vial was methamphetamine and that the orange juice in each of the two remaining vials contained a detectable amount of methamphetamine. Dkt. 21-8, Tr. Trial vol. 2, at 367, 370-72, 378, 382-89; Dkt. 21-9, Tr. Trial vol. 3, at 460, 464-71. According to the OSBI, the combined weight of the contents in all three vials was approximately 180 grams, and the weight of the methamphetamine crystals in the third vial was .70 grams. Dkt. 21-9, Tr. Trial vol. 3, at 474-78; Dkt. 21-10, at 12.

Petitioner's primary theory of defense at trial was that Newell conducted a pretextual traffic stop and planted the methamphetamine in Petitioner's car because, at the time of the traffic stop, Petitioner, who is black, was dating Newell's stepdaughter, Charlee Miller, who is white. Dkt. 21-8, Tr. Trial vol. 2, at 250-52, ; Dkt. 21-9, Tr. Trial vol. 3, at 538, 545-46, 551-61. Like his attempt to hide methamphetamine in a cup of orange juice, this theory of defense proved unsuccessful. Newell testified at trial (1) that he did not personally know Petitioner before the traffic stop[5] and (2) that he did not know about Petitioner's dating relationship with Miller until two or three months

---

[5] Newell candidly testified at the preliminary hearing that he knew of Petitioner before the traffic stop. Specifically, he testified when he initiated the traffic stop he also intended to "do a drug investigation" if the driver was, in fact, Petitioner because Newell had heard from other police officers that Petitioner drove a maroon Pontiac and that Petitioner had "been known in the past to sell and possess illegal narcotics." Dkt. 21-1, Tr. Prelim. Hr'g, at 21-25. At the beginning of the trial, and outside the jury's presence, defense counsel acknowledged the "dilemma" of eliciting testimony from Newell as to whether he knew, or knew of, Petitioner before the traffic stop because Newell's preliminary hearing testimony supported that the stop was pretextual, but not for the reason Petitioner intended to argue. Dkt. 21-8, Tr. Trial vol. 2, at 236-41. Later, near the end of Newell's trial testimony, outside the jury's presence, defense counsel sought a ruling from the court as to whether he could ask Newell whether he knew the description of the car Petitioner was known to drive without opening the door for the State to ask about Newell's knowledge of Petitioner's criminal history. *Id.* at 313-19. After hearing the court, the prosecutor and defense counsel discuss this issue, and after consultation with counsel, Petitioner agreed that it would not benefit him to elicit testimony from Newell about whether he knew the description of Petitioner's car before the traffic stop because it might open the door to evidence of his criminal history. *Id.*

after the traffic stop. Dkt. 21-8, Tr. Trial vol. 2, at 284, 305-08, 311. He also testified Miller had interracial relationships in the past and that his primary concern was not the race of Miller's boyfriends but whether they treated Miller with respect. *Id.* at 323-24. Newell further testified that he had little contact with Miller around the time of the traffic stop because she ran away from home shortly before she turned 18, when he sent her to drug rehabilitation, and she moved away from home when she turned 18. *Id.* at 309. After consultation with defense counsel, Petitioner called Miller as his sole defense witness. Dkt. 21-9, Tr. Trial vol. 3, at 503-06, 514. Miller testified she did not tell Newell that she was dating Petitioner. *Id.* at 510-11, 513. She also testified, on direct examination, that while she was dating Petitioner she was charged with "assault, accessory to assault with a deadly weapon or something like that and shoplifting." *Id.* at 511. On cross-examination, Miller testified that her reluctance to tell Newell about her relationship with Petitioner was not based on Petitioner's race but was instead based on her strained relationship with Newell because she "was doing drugs and stuff" during the time she was dating Petitioner. *Id.* at 513-14.

Petitioner's secondary theory of defense was that the State failed to prove that he knowingly possessed more than 20 grams of a mixture containing a detectable amount of methamphetamine—the quantity necessary to support a trafficking conviction—because, he argued, even if the State established that Petitioner placed crystals of methamphetamine in the cup of orange juice, the crystals alone weighed less than one gram. Dkt. 21-8, Tr. Trial vol. 2, at 250-51; Dkt. 21-9, Tr. Trial vol. 3, at 550-51, 561-69. He argued the State therefore overcharged him by including the entire weight of the orange juice in calculating the drug quantity. *Id.*

At the conclusion of the guilt phase, the jury found Petitioner guilty as charged. Dkt. 21-9, Tr. Trial vol. 3, at 586. At the conclusion of the sentencing phase, the jury found Petitioner had

more than two prior convictions for drug-related felonies and recommended the sentence mandated by statute at the time of Petitioner's offense—life without the possibility of parole. Dkt. 21-9, Tr. Trial vol. 3, at 613; *see also* Dkt. 17-2, OCCA Op., at 1. The trial court sentenced Petitioner accordingly on March 30, 2016. Dkt. 1, at 1; Dkt. 17-1, at 1.

Represented by counsel, Petitioner filed a timely direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), asserting two propositions of error. Dkt. 1, at 2; Dkt. 17-2, OCCA Op., at 1. First, he claimed he was denied his Fifth Amendment right to due process and Sixth Amendment right to a fair trial because he was not present when the trial court held *in camera* discussions during voir dire with two potential jurors, both of whom ultimately served on the jury. Dkt. 17-2, at 1-2. Second, he claimed he was deprived of his Sixth Amendment right to counsel because trial counsel, who did participate in those *in camera* discussions, failed to advise Petitioner of his right to be present for those discussions. *Id.* at 2. In an unpublished order filed April 13, 2017, in Case No. F-2016-306, the OCCA denied Petitioner's request for an evidentiary hearing on his ineffective-assistance-of-trial-counsel claim, rejected both propositions of error, and affirmed Petitioner's judgment and sentence. *Id.* at 1-6. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Dkt. 1, at 3.

Proceeding pro se, Petitioner filed an application for postconviction relief in state district court on April 2, 2018. Dkt. 1, at 3; Dkt. 17-3, at 1. He asserted five propositions of error:

> Proposition 1: Petitioner is actually and factually innocent of violating 63 O.S. 2011 § 2-415, trafficking in methamphetamine, 20 grams or more.
>
> Proposition 2: The State's evidence was insufficient to prove that Petitioner (Birch) was guilty of knowingly and intelligently possessing methamphetamine on April 18, 2013.
>
> Proposition 3: The State gained an unfair advantage when an unknown party in the Court Clerk's office gave a copy of the defense's motion for "ex parte proceedings" to the prosecutor's team.

> Proposition 4: The prosecutor utilized improper methods calculated to produce a wrongful conviction.
>
> Proposition 5: Both trial and appellate counsel were ineffective in the representation of Petitioner (Birch).

Dkt. 17-3, at 3-4. Petitioner specifically alleged appellate counsel was ineffective for failing to raise these five propositions on direct appeal. *Id.* On April 18, 2018, the state district court denied Petitioner's request for an evidentiary hearing and denied his application for postconviction relief. Dkt. 17-5, at 1-3. Petitioner timely filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief on December 14, 2018. Dkt. 17-6, at 1-7.

Several months later, either in March or April 2019, Petitioner filed the instant federal habeas petition in the United States District Court for the Western District of Oklahoma. Dkt. 1, at 1. Petitioner declared, under penalty of perjury, that he placed the petition in the prison legal mail system on March 13, 2019. *Id.* at 33. The Clerk of Court for the Western District of Oklahoma received the petition on April 5, 2019, and the petition was transferred to this Court on May 21, 2019. Dkt. 1, at 1; Dkts. 7, 8. Petitioner seeks habeas relief on the following grounds:

> Ground One: Petitioner was denied the effective assistance of counsel in violation of his federally protected constitutional right.
>
> Ground Two: Petitioner was illegally seized after the conclusion of an invalid traffic stop had concluded, thereby being followed by illegal seizure, the officer made an illegal search of Petitioner's vehicle.
>
> Ground Three: The courts abused [their] discretion by failing to find the actual/factual innocence claim had merit.
>
> Ground Four: The prosecution's knowing use of perjured testimony and suppression of material impeachment evidence concerning state's witnesses denied Petitioner due process of law.
>
> Ground Five: The Petitioner reincorporates all issues raised within the direct felony appeal and application for post-conviction relief by incorporation by reference hereto as if plead in full.

Dkt. 1, at 5-28.

In response to the habeas petition, Respondent filed a motion to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations (Dkt. 16) and a brief in support (Dkt. 17). Petitioner filed a response in opposition to the motion (Dkt. 18). After review of the motion and response, the Court directed Respondent to submit a copy of the state court record. Dkt. 20. Respondent did so on January 15, 2020. Dkt. 21.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations for a state prisoner seeking federal habeas relief from a state-court judgment. 28 U.S.C. § 2244(d)(1). Generally, that limitation period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Under some circumstances, the one-year limitation period may commence on a later date. *Id.* § 2244(d)(1)(B), (C), (D). Regardless of which statutory provision governs the commencement date, the one-year limitation period is statutorily tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). Because the AEDPA's one-year limitation period is not jurisdictional, federal courts may toll the limitation period for equitable reasons, *Holland v. Florida*, 560 U.S. 631, 645 (2010), and may excuse non-compliance with the statute of limitations if the prisoner makes "a credible showing of actual innocence," *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

## III.

Respondent contends the habeas petition is untimely under 28 U.S.C. § 2244(d)(1)(A) because Petitioner has not shown that he filed the petition within one year of the date his conviction became final. Dkt. 17, at 3-6. Respondent further contends Petitioner cannot overcome the time-

7

bar because (1) he has not presented a credible claim of actual innocence and (2) he has not demonstrated any other circumstances that would support equitable tolling of the one-year limitation period. *Id.* at 11-15.[6]

In his response, Petitioner contends he complied with the prison mailbox rule and thus filed the petition within the applicable one-year limitation period under § 2244(d)(1)(A). Dkt. 1, at 32-33; Dkt. 18, at 1-2. Alternatively, Petitioner urges this Court to excuse his untimely filing on the basis that he is "actually innocent." Dkt. 1, at 17-24; Dkt. 18, at 2.

**A.  The petition is untimely under § 2244(d)(1)(A).**

Under § 2244(d)(1)(A), the one-year limitation period commences when a state prisoner has either (1) exhausted all avenues for direct review of his or her state-court judgment or (2) has allowed the time for seeking direct review to expire. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Following his March 30, 2016, sentencing hearing, Petitioner timely filed a direct appeal with the OCCA. Dkt. 17-2, OCCA Op., at 1. The OCCA affirmed his judgment and sentence on April 13, 2017. *Id.* at 1, 6. Petitioner had 90 days thereafter, or until July 12, 2017, to seek further direct review by filing a petition for writ of certiorari with the United States Supreme Court. U.S. Sup. Ct. R. 13.1. Because Petitioner did not file a petition for writ of certiorari, his conviction became final on July 12, 2017, when the time to do so expired. *Gonzalez*, 565 U.S. at 150; *Woodward v.*

---

[6] Respondent also contends the petition is untimely under § 2244(d)(1)(D). Dkt. 17, at 7. Under that provision, the one-year limitation period commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Respondent argues this provision does not apply because "all of the facts Petitioner alleges in support of his grounds for relief were known to him, or could have been known to him, at or before the time of trial, and long before the filing of his post-conviction application and habeas petition." Dkt. 17, at 7-11. Even with the benefit of liberal construction, the Court does not read Petitioner's arguments, in either the petition or the response, as seeking a later commencement date under § 2244(d)(1)(D). However, to the extent Petitioner's pleadings could be so construed, the Court agrees with Respondent that Petitioner's factual allegations in support of his habeas claims do not support application of § 2244(d)(1)(D).

8

*Cline*, 693 F.3d 1289, 1292 (10th Cir. 2012). Under § 2244(d)(1)(A), Petitioner's one-year limitation period commenced the next day, July 13, 2017, and, absent statutory tolling, would have expired on July 13, 2018. *See Harris v. Dinwiddie*, 642 F.3d 902, 907 n.6 (10th Cir. 2000) (discussing calculation of one-year period).

On April 2, 2018, or 263 days after the commencement of his one-year limitation period, Petitioner filed an application for postconviction relief in state district court. Dkt. 1, at 3; Dkt. 17-3, at 1. That application was pending until December 14, 2018, when the OCCA affirmed the denial of postconviction relief. Dkt. 17-6, at 1, 6-7. Under these facts, Petitioner's one-year limitation period was tolled from April 2, 2018, until December 14, 2018. 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 332 (2007). Petitioner's one-year limitation period recommenced on December 15, 2018. *Harris*, 642 F.3d at 907 n.6. At that time, Petitioner had 102 days, or until March 26, 2019, to file a timely federal habeas petition.

The Clerk of Court for the United States District Court for the Western District of Oklahoma received Petitioner's habeas petition on April 5, 2019. Dkt. 1, at 1. Even with the benefit of statutory tolling, this was 10 days after Petitioner's one-year limitation period expired. Thus, the petition is untimely under § 2244(d)(1)(A).

**B.      Petitioner has not demonstrated compliance with the prison mailbox rule.**

Petitioner urges the Court to apply the prison mailbox rule and deem his petition filed on March 13, 2019, before the expiration of his one-year limitation period under § 2244(d)(1)(A). Dkt. 1, at 33; Dkt. 18, at 1-2. Respondent contends Petitioner has not demonstrated compliance with the prison mailbox rule. Dkt. 17, at 5-6.

Under the prison mailbox rule, a state prisoner's federal habeas petition "will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the

court itself receives the documents." *Price v. Philpot*, 420 F.3d 1158, 1163-64 (10th Cir. 2005). To benefit from the prison mailbox rule, a prisoner must "establish the date on which he or she gave the papers to be filed with the court to a prison official." *Price*, 420 F.3d at 1165. The prisoner can establish this date

> by either (1) alleging and proving that he or she made timely use of the prison's legal mail system if a satisfactory system is available, or (2) if a legal system is not available, then by timely use of the prison's regular mail system in combination with a notarized statement or declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that the postage was prepaid.

*Id.* at 1163-64 (10th Cir. 2005).[7] The Tenth Circuit generally requires strict compliance with either method of proof, and it is the prisoner's burden to demonstrate compliance. *See, e.g., United States v. Rodriguez*, 422 F. App'x 668, 670 (10th Cir. 2011) (unpublished)[8] ("Alleging . . . use[ ] [of the] 'institutional mails' is insufficient to connote use of the 'legal mail system.'" (quoting *Price*, 420 F.3d at 1166)); *Hailey v. Ray*, 312 F. App'x 113, 115 (10th Cir. 2009) (unpublished) (finding state prisoner "failed to carry his burden under the prison mailbox rule" when prisoner attested he "placed his petition in a 'blue mail box' in his prison," thus failing to establish he used legal mail system and, alternatively, failed to aver in his declaration "that postage was prepaid").

Here, on the last page of his habeas petition, Petitioner includes the following signed and notarized statement:

> I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison legal mail system on March 13, 2019 (month, day, year). Executed (signed)

---

[7] The declaration *Price* refers to is one that complies with 28 U.S.C. § 1746. "A declaration in compliance with 28 U.S.C. § 1746 includes a 'declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated.'" *Price*, 420 F.3d at 1168 n.6 (quoting 28 U.S.C. § 1746).

[8] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

on March 13, 2019 (date).

Dkt. 1, at 33. Other than the dates Petitioner added in his own handwriting and Petitioner's signature, the language of this statement is pre-printed on the court-approved form Petitioner used to submit his habeas petition. *Id.*

Respondent contends this statement does not suffice to show compliance with the prison mailbox rule for two reasons. Respondent first argues Petitioner failed to aver that he delivered the petition to prison officials for mailing *with postage prepaid*. Dkt. 17, at 6. This is true. But the pre-printed statement on the court-approved form does not include any language regarding prepaid postage. *Id.* Accordingly, the Court finds Petitioner's failure to include that language in his notarized statement is excusable. *See United States v. Spence*, 625 F. App'x 871, 874 (10th Cir. 2015) (unpublished) (finding petitioner's initial noncompliance with prison mailbox rule was reasonable when petitioner used a court-approved form with pre-printed statement that referred to "prison mailing system" rather than "prison legal mail system" and said nothing about prepaid postage). Moreover, in response to the motion to dismiss Petitioner states that "appropriate stamps for mailing were affixed to the envelope" when he submitted it "to the prison legal mail service for mailing on the date indicated in his habeas declaration of mailing." Dkt. 18, at 1-2. And the record reflects there are, in fact, five postage stamps affixed to the envelope Petitioner used to mail the habeas petition. Dkt. 1-9, at 1. Thus, the Court finds Petitioner's sworn declaration, the statements in his response, and the postage stamps affixed to the envelope, collectively, suffice to show that he submitted the petition for mailing with postage prepaid.

Respondent's second argument, however, is more compelling. Respondent argues that the Davis Correctional Facility (DCF) has a legal mail system and Petitioner has alleged, *but has not proven*, that he used it to mail his habeas petition. Dkt. 17, at 6. Significantly, "[i]f an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of [the

11

prison mailbox] rule." Rule 3(d), *Rules Governing Section 2254 Cases in the United States District Courts*. "A prison legal mail system . . . is one in which 'prison authorities log in all legal mail at the time it is received.'" *Hailey*, 312 F. App'x at 115 (quoting *United States v. Gray*, 182 F.3d 762, 765 (10th Cir. 1999)). To support this argument, Respondent submitted a printout of Petitioner's inmate mail history for the period from March 1, 2019, through April 30, 2019. Dkt. 17-9. The printout has nine entries, all dated between March 12, 2019 and April 18, 2019. *Id.* Four of the entries reflect outgoing legal mail and five reflect incoming legal mail. *Id.* None of the entries reflects that Petitioner sent legal mail to the United States District Court for the Western District of Oklahoma. *Id.* Two entries indicate Petitioner received legal mail from that court on April 8 and April 18. *Id.* The printout of Petitioner's inmate mail history shows that the DCF has a legal mail system and appears to show that Petitioner did not use that system to mail his habeas petition.

Petitioner attempts to controvert this evidence by asserting, in his response, (1) that the petition "was apparently placed in the Davis Correctional Facility Legal Mail service and did eventually get mailed to the Court Clerk for filing," (2) that "[h]e mailed his habeas in compliance with Rule 3 . . . by handing his habeas over to the prison legal mail service for mailing on the date indicated on his habeas declaration of mailing," (3) that he "delivered the envelope unopened to the mail room, as required by the service, it was weighed, and appropriate stamps for mailing were affixed to the envelope at that time," and (4) that he cannot be faulted for any errors on the part of prison officials for failing to log his outgoing legal mail. Dkt. 18, at 1-2.

There is no question that the habeas petition "eventually" was mailed from the DCF. As just discussed, the envelope used to mail the petition bears five postage stamps and an institutional stamp indicating it contains correspondence from an inmate at the DCF. Dkt. 1-9, at 1-2.

However, there are no marks signifying that the contents of the envelope were designated as "legal mail." *Id.* And it is clear from the record that the envelope was not postmarked until April 4, 2019—one day before the Clerk of Court for the United States Court for the Western District of Oklahoma received the habeas petition. Dkt. 1, at 1; Dkt. 1-9, at 1. Thus, the question remains: Has Petitioner shown that he used the DCF's legal mail system on March 13, 2019, as he declared under penalty of perjury?

On the record presented this is a close question, but the answer is no. Petitioner swears he used the prison's legal mail system to mail his petition on March 13, 2019. Dkt. 1, at 33. But the envelope he sent it in was not postmarked until April 4, 2019. Dkt. 1-9, at 1. The printout of Petitioner's inmate mail history shows no outgoing legal mail on March 13, 2019, but it also shows no outgoing legal mail on April 4, 2019. Dkt. 17-9, at 1. When faced with the printout of his mail history that appears to show he failed to use the legal mail system on either date, Petitioner responded with vague, assertions regarding when he mailed the petition ("eventually" and "on the date indicated on his habeas declaration of mailing") and suggested that prison officials failed to log his outgoing mail. Dkt. 18, at 1-2. The Court does not doubt the possibility that prison officials commit errors in logging prisoner mail. However, to accept Petitioner's assertions that prison officials failed to log his legal mail when he mailed his petition, the Court would have to find that prison officials (1) failed to log Petitioner's legal mail on March 13, 2019, when Petitioner claims he submitted the habeas petition for mailing, (2) inexplicably failed to postmark the envelope until April 4, 2019, and (3) also failed to log Petitioner's outgoing legal mail on April 4, 2019, when the envelope containing the habeas petition was postmarked. Given that prison officials successfully logged Petitioner's incoming and outgoing legal mail on nine separate occasions between March 1 and April 30, 2019, the Court finds it more likely that if prison officials

committed a logging error, they did so only once, on April 4.

In sum, even assuming Petitioner "eventually" used the prison's legal mail system to mail his habeas petition, the evidence does not support his sworn declaration that he did so on March 13, 2019. The Court therefore finds that Petitioner has not met his burden to show he complied with the prison mailbox rule. The evidence instead supports that Petitioner filed his habeas petition, at the earliest, on April 4, 2019. Because that was nine days after his one-year limitation period expired, his petition is untimely.

**C.     Petitioner has not presented a credible actual-innocence claim.**

Petitioner's only remaining argument to avoid dismissal of his untimely petition is that he is "actually innocent" of the crime for which he was convicted. Dkt. 1, at 17-24; Dkt. 18, at 2-4.[9] Petitioner's actual-innocence claim appears to rest on three arguments: (1) the State prevented him from fully presenting his theory that he was framed by Officer Newell, (2) the State, through inadequate testing procedures, failed to prove beyond a reasonable doubt that he possessed the quantity of methamphetamine necessary to support his trafficking conviction, and (3) because the State failed to properly determine the weight of the actual methamphetamine in the orange-juice "mixture" he possessed, the issue of drug quantity was not "properly put before the jury" resulting in a violation of his right to have every element necessary to increase his punishment submitted to

---

[9] Petitioner presents his actual-innocence claim as his third ground for habeas relief, arguing that the state courts abused their discretion by rejecting his "free-standing actual innocence claim" when he presented it in his application for postconviction relief. Dkt. 1, at 17-24. But an actual-innocence claim is not, in and of itself, a cognizable federal habeas claim. *See Perkins*, 569 U.S. at 392 ("We have not resolved whether a prisoner may be entitled to habeas relief on a freestanding claim of actual innocence."); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) (noting cognizability of "federal constitutional right to be released upon proof of 'actual innocence'" remains "an open question"). Thus, like Respondent, the Court will construe Petitioner's ground three claim as asserting an actual-innocence claim to avoid the time-bar. Dkt. 17, at 11-14.

a jury and proven beyond a reasonable doubt, as that right was interpreted in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Dkt. 1, at 17-24.

If "credible," an actual-innocence claim "serves as a gateway through which [the] petitioner may pass" to obtain review of other cognizable, but untimely, federal habeas claims alleging that the petitioner is in custody in violation of the Constitution. *Perkins*, 569 U.S. at 386, 392. To present a credible actual-innocence claim, a habeas petitioner generally must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). And the petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329.

Petitioner first claims no rational jury would have convicted him had he been able to "fully present his defense" that Officer Newell framed him because Petitioner was in an interracial dating relationship with Newell's stepdaughter. Dkt. 1, at 18-19; Dkt. 18, at 2. To support this argument Petitioner presents a report from the Oklahoma Department of Motor Vehicles (DMV) which he contends constitutes "new evidence" that "disproves" Newell's testimony at trial stating that Petitioner had a valid driver's license at the time of the traffic stop. Dkt. 1, at 18. As Petitioner contends, the DMV report, dated October 17, 2018, shows that Petitioner's driver's license expired on January 31, 2013. Dkt. 1-1, at 1. Further, as Petitioner contends, Newell testified at trial that he confirmed on the date of the traffic stop, April 18, 2013, that Petitioner had a valid driver's license. Dkt. 21-8, Tr. Trial vol. 2, at 266. Petitioner argues a reasonable jury hearing evidence that Newell incorrectly testified about the validity of Petitioner's driver's license "would have found the Petitioner's version of the facts more credible, thus finding him not guilty beyond a

reasonable doubt." Dkt. 1, at 18; Dkt. 18, at 2-3. Assuming without deciding that the DMV report constitutes "new" evidence, its admission at trial would have served only to impeach Newell's credibility. As a general rule, impeachment evidence does not support a credible claim of actual innocence. *See Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014) (noting that "[s]imply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy" the *Schlup* standard); *Stafford v. Saffle*, 34 F.3d 1557, 1562 (10th Cir. 1994) (finding that habeas petitioner's evidence in support of his actual-innocence claim, even if new, was "only impeachment evidence, rather than evidence of actual innocence"). Application of that general rule is particularly apt here because Petitioner thoroughly challenged Newell's credibility at trial and both the prosecutor and defense counsel emphasized in closing arguments that Newell's credibility was a key issue for the jury to consider. *See, e.g.*, Dkt. 21-8, Tr. Trial vol. 2, at 285-322, 324-25 (cross-examination and re-cross examination of Newell); Dkt. 21-9, Tr. Trial vol. 3, at 538-71 (closing arguments). Following review of the trial transcripts, the Court is not persuaded that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt" even if Petitioner had presented the DMV report to further impeach Newell's testimony. *Schlup*, 513 U.S. at 329.

In his second argument, Petitioner contends he is actually innocent because "the State of Oklahoma committed gross error when it failed to do a gas chromatograph/mass spectrometer ("GCMS") machine to determine the actual amount of drugs [he] possessed." Dkt. 1, at 19-22. Petitioner argues that "without the proper testing techniques," the State violated his right to due process by failing to prove he possessed "the necessary quantity of methamphetamine to sustain the trafficking charge." *Id.* at 20-21. Relatedly, in his third argument, Petitioner contends the State's failure to properly determine the drug quantity, made it "factually impossible" for the jury

16

to find, beyond a reasonable doubt, that he possessed the drug quantity necessary to support his sentence, resulting in an *Apprendi* violation. *Id.* at 22-24. These arguments fail to support a credible actual-innocence claim for two reasons. First, contrary to Petitioner's argument, the OSBI criminalist who analyzed the contents of all three evidence vials testified that she did so using a gas chromatograph and a gas chromatograph mass spectrometer. Dkt. 21-9, Tr. Trial vol. 3, at 462-63, 469-70. She further testified she used a scale to determine the net weight of the orange juice that contained a detectable amount of methamphetamine and the crystals of methamphetamine. *Id.* at 474, 476-77. Second, as Respondent contends, Petitioner's arguments that the State failed to prove every essential element of the crime for which he was convicted effectively challenge the sufficiency of the evidence presented at trial. Dkt. 17, at 13. A challenge to the sufficiency of the evidence may support that Petitioner is legally innocent, but it does not support that he is factually innocent. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (discussing *Schlup* standard and stating that "'actual innocence' means factual innocence, not mere legal insufficiency"); *Craig v. McCollum*, 590 F. App'x 723, 726 (10th Cir. 2014) (unpublished) (noting that habeas petitioner's argument challenging State's failure to prove every element of the crime asserted a "legal insufficiency claim" and thus did not support his assertion of actual innocence).

For these reasons, the Court concludes that Petitioner has not presented a credible actual-innocence claim. Thus, he cannot rely on *Perkins*' equitable exception to overcome his failure to comply with the AEDPA's one-year statute of limitations.

## IV.

Based on the foregoing analysis, the Court concludes that Petitioner failed to file his petition for writ of habeas corpus within one-year of the date his conviction became final, as

required under 28 U.S.C. § 2244(d)(1)(A). The Court further concludes that Petitioner has not demonstrated either (1) that the Court should apply the prison mailbox rule to deem the petition timely filed or (2) that the Court should apply *Perkins*' equitable exception to excuse the untimely filing. The Court thus concludes that Respondent's motion should be granted and the petition for writ of habeas corpus should be dismissed with prejudice as time-barred.

V.

Finally, the Court must consider whether to issue or deny a certificate of appealability. Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the [petitioner]." A district court may issue a certificate of appealability "only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the court rejects a petitioner's constitutional claims on the merits, the petitioner must make this showing by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But "when the court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim" the petitioner must show "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Based on the Court's review of the trial transcripts and the pleadings and decisions from Petitioner's state postconviction proceedings, the Court finds that reasonable jurists could debate whether the petition, liberally construed, states a valid claim that either trial counsel or appellate counsel, or both, rendered ineffective assistance by failing to adequately challenge the sufficiency

of the evidence used at trial to convict Petitioner of trafficking methamphetamine, specifically the evidence relating to the State's determination of the drug quantity.[10] But the Court finds that reasonable jurists would not debate the correctness of its determination that the petition is time-barred. The Court thus declines to issue a certificate of appealability.

Petitioner is advised that if he chooses to appeal the dismissal of his habeas petition, he may not appeal this Court's decision regarding the certificate of appealability. *See* Rule 11(a), *Rules Governing Section 2254 Cases in the United States District Courts*. However, he may request a certificate of appealability from the United States Court of Appeals for the Tenth Circuit, as provided in Federal Rule of Appellate Procedure 22. In any event, he must file a notice of appeal within 30 days of the entry of this opinion and order, as provided in Federal Rule of Appellate Procedure 4.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Respondent's motion to dismiss (Dkt. 16) is **granted**.

2. The petition for writ of habeas corpus (Dkt. 1) is **dismissed with prejudice** as time-barred.

3. A certificate of appealability is **denied**.

---

[10] In his application for postconviction relief, Petitioner asserted a due process violation occurred when the State used the combined weight of the orange juice and the methamphetamine to convict him of trafficking. Dkt. 17-4, at 2-5. He specifically argued that the State's interpretation of "mixture" to include the entire weight of orange juice containing an unquantified and nonmarketable amount of methamphetamine was contrary to the United States Supreme Court's interpretation of "mixture," as used in the same context in a federal statute, in *Chapman v. United States*, 500 U.S. 453 (1991). One Oklahoma case suggests this might have been a viable claim had it been raised on direct appeal. *See Brumfield v. State*, 155 P.2d 826, 835-36 (Okla. Crim. App. 2007) (discussing *Chapman*, finding "mixture" was properly applied to include liquid byproduct resulting from methamphetamine manufacturing process, and stating, "[t]his is not a case where a trace amount of methamphetamine was detected in a tub full of bathwater"). Neither the state district court nor the OCCA addressed Petitioner's *Chapman* argument, either as a standalone claim or as a claim underlying Petitioner's ineffective-assistance-of-appellate-counsel claim, in denying postconviction relief. Dkts. 17-5, 17-6.

4. A separate judgment shall be entered in this matter.

   **DATED** this 28th day of January 2020.

   *[signature]*
   TERENCE C. KERN
   United States District Judge